1
2
3
4        UNITED STATES DISTRICT COURT
5        EASTERN DISTRICT OF WASHINGTON
6    DAN PURCELL, et al,                          )
                                                  )
7                          Plaintiffs,            )    No.  CV-13-285-JLQ
                                                  )
8                    vs.                          )  **ORDER GRANTING IN PART &**
                                                  )  **DENYING IN PART DEFENDANTS'**
9    THE AMERICAN LEGION, et al,                  )  **MOTION FOR SUMMARY**
                                                  )  **JUDGMENT**
10                         Defendants.            )
                                                  )
11   _____     )

12        BEFORE THE COURT is Defendant's Motion for Summary Judgment,

13   Memorandum in Support (ECF No. 23), and supporting Declarations and exhibits.

14                        **I. Factual Background**

15        Plaintiff Irita Williams was hired by the American Legion Department of

16   Washington's Spokane office in 2001. In 2004, she was trained to become a Certified

17   Service Officer to assist veterans with their benefit claims and claims for widows'

18   compensation at the U. S. Veterans Administration Hospital in Spokane, Washington.

19   In early 2010, the American Legion hired Plaintiff Dan Purcell, who eventually

20   worked as a service officer along with Ms. Williams. From 2010 to 2012, the Spokane

21   office was led by office manager Barry Blackerby.

22        In January 2012, after holding other positions with the American Legion,

23   Defendant William Powell was appointed as Department Service Officer for

24   Washington. In this role, he works at the Seattle Federal Building, managing the

25   Seattle, American Lake, and Spokane offices, assuring that volunteers and post service

26   officers receive appropriate training, managing the budget, and handling appeal

27   hearings.

28   ORDER - 1

On January 13, 2012, U.S. Department of Veteran's Affairs (VA) Decision Review Officer Beth Magee claims to have been present during a conversation between Mr. Powell and VA employee Tammy Skrinski discussing the Spokane office. (ECF No. 35 at 1). In response to Ms. Magee's claiming she heard that Ms. Williams was going to replace Mr. Blackerby as office manager, Mr. Powell is alleged to have said that Ms. Williams was not qualified to be office manager because of her "mental problems" and Mr. Purcell was not qualified because of his Post Traumatic Stress Disorder (PTSD). (ECF No. 35 at 2). Mr. Powell denies having made these comments. (ECF No. 24 at 12). Nevertheless, Ms. Magee informed Ms. Williams about Mr. Powell's alleged comments in February 2012. (ECF No. 25 at 68).

In early February 2012, Mr. Powell left several voice mail messages with Mr. Purcell, stating that if the Spokane employees do not return his calls "they could all walk." (ECF No. 24 at 9). On February 7, 2012, Mr. Powell called Mr. Purcell and apologized for leaving those messages. (ECF No. 24 at 10).

On February 14, 2012, Mr. Powell visited the Spokane office for the first time, bringing with him American Legion Executive Board member Linda Hazelmeyer because he had a feeling "the meeting may go south..." (ECF No. 31 at 3-4). Indeed it did. Mr. Powell criticized the office for deficiency in the number of claims processed, hours of operation, not answering phones, and accused Mr. Blackerby of falsifying time cards. (ECF No. 31 at 4).

On February 21, 2012, Mr. Purcell and Ms. Williams submitted written complaints about Mr. Powell to then American Legion Department of Washington Commander Jake Cabaug. Among other things, the Plaintiffs took issue with Mr. Powell's perceived hostility towards the Spokane office and complained that he divulged private health matters to Ms. Magee. (ECF No. 25-3 at 2-3). Ms. Williams stated she felt her job was threatened due to her disability. (ECF No. 25-3 at 3). On March 28, 2012, Mr. Purcell emailed Commander Cabaug inquiring as to the status of

ORDER - 2

the issues Plaintiffs raised and asked whether they were being investigated. (ECF No. 32-10 at 2). On April 10, 2012, Washington Legion Adjutant Dale Davis responded via email to Mr. Purcell and attached a letter from Commander Cabaug stating he had inquired into the facts, taken corrective action where required, and that Mr. Powell would continue to serve. (ECF No. 32-5 at 7). Mr. Purcell responded to Mr. Davis with concern that no one had contacted him, Ms. Williams, or Ms. Magee, "for clarification of the issues." (ECF No. 32-11 at 2).

On April 24, 2012, Mr. Purcell submitted an Equal Employment Opportunity Commission (EEOC) complaint to the Commission against Mr. Powell alleging employment discrimination based upon disability. (ECF No. 32 at 97). The complaint stated "The DSO [Mr. Powll] conveyed to 3rd party VA employee that he intended to fire our supervisor and I was not eligible for promotion because I have PTSD." (ECF No. 32 at 95). While it is unclear when the American Legion received a copy of the EEOC complaint, the form indicates that the EEOC is required to give the employer notice of the charge.

On May 23, 2012, Mr. Powell traveled to Spokane and, among other things, announced that Ms. Williams would take over Mr. Blackerby's position as office manager on July 1, 2012, when Mr. Blackerby retired. Throughout June 2012, Mr. Powell and Ms. Williams exchanged a series of emails regarding the terms of her becoming the office manager. The emails originated from Mr. Purcell's email account, rather than Ms. Williams', but were signed electronically by Ms. Williams. (ECF No. 25-13 at 2-5). Using another's email account is a violation of the VA's computer use policy. (ECF No. 32-6 at 4). Ms. Williams and Mr. Purcell claim that Ms. Williams had been having computer problems with her email, and so she dictated her emails to Mr. Purcell to send from his account. (ECF No 24 at 16). On July 1, 2012, Ms. Williams took over as office manager in Spokane.

On July 26, 2012, Mr. Purcell filed a Health Information Privacy Complaint

ORDER - 3

with the Washington State Department of Health and Human Services Office for Civil Rights. The complaint again alleges that Mr. Powell told another VA employee that Mr. Purcell was not eligible for promotion because of his PTSD. (ECF No. 32-13 at 2). On July 30, 2012 Ms. Williams and Mr. Purcell filed discrimination charges with the Washington State Human Rights Commission again alleging that Mr. Powell discriminated against them because of their disabilities. (ECF No. 32-14 at 2); (ECF No. 32-21 at 2).

On August 9, 2012, Ms. Williams used Mr. Purcell's email account to send a formal complaint to the new American Legion Washington Department Commander Loren Sperry, with Mr. Powell CC'ed. The email began "I would like to file yet another formal complaint against our DSO Bill Powell" and went on to allege "ongoing hostility and spurious accusations" about the Spokane staff by Mr. Powell. (ECF No. 32-16 at 2). That same day, Mr. Powell faxed a letter to Ms. Williams accusing her of being in violation of the VA's computer policy by sending emails from Mr. Purcell's account. He warned her that "you have until August 17, 2012 to have your computer back up and running" and that "if at the end of the next week your computer is not working appropriate disciplinary action will be taken." (ECF No. 32-22 at 2).

The following morning, August 10, 2012, Mr. Powell had the VA Information Security Office revoke computer access for Mr. Purcell and Ms. Williams. (ECF No. 32-6 at 5). Mr. Powell then faxed Ms. Williams a message stating that "The Spokane office computer access has been revoked for VA computer usage violations and will not be granted back until the Spokane Office Staff comply with VA computer usage for workstation." (ECF No. 25-5 at 2). Ms. Williams handwrote a response on the faxed letter and returned it on August 13, 2012, claiming there was no computer violation and asked for clarification. Nevertheless, later that same day, VA Information Security Officer (ISO) Casey Longacre sent an email to Mr. Powell and

ORDER - 4

the rest of the ISO team advising that "William Powell should investigate, determine action he will take, meet with designated Director's Office representative and explain what happened and agree upon next steps. Accounts to be re-enabled, or deleted dependent upon agreement with Mr. Powell and Director." (ECF 32-6 at 3). Mr. Powell admits that he did not further investigate the matter nor contact either Mr. Purcell or Ms. Williams about the computer violations. (ECF No. 31 at 9). At his deposition, Mr. Powell testified that he orally recommended to the Commander that the Plaintiffs be retrained on the VA's computer policies, but that the Adjutant overruled him by stating "I think they pushed enough to be replaced." (ECF No. 31 at 10). No documentary evidence supports Mr. Powell's assertion that he advocated against firing the Plaintiffs but was overruled.

On August 20, 2012, Mr. Purcell and Ms. Williams took leave time away from the Spokane office. Mr. Powell had their offices sealed by VA police for security reasons. (ECF No. 32-15 at 2).

On August 29, 2012, Mr. Powell sent ISO Longacre a letter again detailing the Plaintiffs' VA computer policy violation. Additionally, the letter states that "As of today the computer privilege has been revoked and as soon as they are off Medical leave they will be terminated for failure to comply with Department and VA directives." (ECF No. 32-6 at 2). The letter concluded: "To protect the Department and the veterans of the state of Washington I feel it time to part [ways] so termination of employment is the only way." *Id*. Mr. Purcell was terminated on September 10, 2012 and Ms. Williams on September 18, 2012.

## II. Procedural History

On June 12, 2013, Plaintiffs filed this action in Spokane County Superior Court against the American Legion Department of Washington and Mr. Powell. Defendants removed the matter to this court on July 31, 2013.

On August 30, 2013, Plaintiff filed their Second Amendment Complaint,

ORDER - 5

alleging four causes of action: 1) violation of the Washington Law Against Discrimination, RCW 49.60.210(1); 2) violation of the Americans with Disabilities Act ("ADA"); 3) common law right to privacy; 4) false light. (ECF No. 5)

On June 27, 2014, Defendants filed the instant Motion for Summary Judgment on all of Plaintiffs' claims.

### III. Analysis

### A. Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried the burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). In meeting this burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *Miller v. Glenn Miller Productions*, 454 F.3d 975, 987 (9th Cir. 2006) (quoting FED. R. CIV. P. 56(e)).

ORDER - 6

### B. Americans with Disabilities Act Retaliation

The sole federal claim asserted in Plaintiffs' Second Amended Complaint is the alleged violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiffs clarified in their Response to Defendants' Motion for Summary Judgment that the basis for their ADA claim is retaliation for "presenting internal grievances against Powell and for filing external EEO complaints against Powell." (ECF No. 36). The retaliation provision of the ADA provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

ADA retaliation claims are adjudicated under the same framework as Title VII retaliation claims, 42 U.S.C. § 2000e-3. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) *vacated on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). Therefore, to prove their ADA retaliation claim, Plaintiffs must each show by a preponderance of the evidence that: (1) he/she engaged in activity protected by the ADA, (2) he/she was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). If the employee establishes a *prima facie* case, the employee will avoid summary judgment unless the employer offers a legitimate reason for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. *Id.*

### 1. ADA Retaliation Claim against Defendant Powell

The ADA retaliation claim against Defendant Powell must be dismissed with prejudice under Rule 12(b)(6). Numerous courts, including the Ninth Circuit, have held there is no individual liability for ADA violations. *See, e.g., Walsh v. Nevada*

ORDER - 7

*Dep't. of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) ("Because Title I of the ADA adopts a definition of 'employer' and a remedial scheme that is identical to Title VII [the] bar on suits against individual defendants also applies to suits brought under Title I of the ADA."). Although the ADA's general anti-retaliation provision provides that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter...," the consensus view among the district courts in this as well as the Second, Seventh, Tenth, and Eleventh Circuits is there is no individual liability for retaliation under the ADA. *See, e.g., Spiegel v. Schulmann*, 604 F.3d 72, 79 (2nd Cir. 2010); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280-82 (7th Cir. 1995); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996).

**2. ADA Retaliation Claim against Defendant American Legion**

The parties do not dispute that Plaintiffs participated in a statutorily protected activity by filing discrimination charges with the EEOC and experienced an adverse employment action when terminated. (ECF No. 37 at 2); (ECF No. 36 at 4). Therefore, the only question before the court is whether Plaintiffs can show the third element, a causal connection between the protected activity and the adverse action.

**a. "But-for" standard of proof**

The standard of proof for the causation element in an ADA retaliation claim is currently unsettled. Until recently, it was clear that a plaintiff bringing an ADA retaliation claim could establish the requisite causation by showing that the protected activity was a motivating factor in the adverse employment decision. However, the Supreme Court recently held in *Univ. of Texas Sw. Med. Ctr. v. Nassar* that the causal link between the protected activity and the employer's adverse action in a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." 133 S.Ct. 2517, 2534 (2013). The

ORDER - 8

Ninth Circuit has not yet had an occasion to apply *Nassar* to ADA retaliation claims; however, as outlined above, retaliation claims are adjudicated under the same standards as Title VII retaliation claims. *Barnett*, 228 F.3d, at 1121 ("Therefore, we join our sister circuits in adopting the Title VII retaliation framework for ADA retaliation claims."). District courts in this Circuit have therefore applied the "but-for" causation standard to ADA retaliation claims. *See e.g., Gallagher v. San Diego Unified Port Dist.,* 2014 WL 1455961, at *4 (S.D. Cal. Apr. 14, 2014); *Brooks v. Capistrano Unified Sch. Dist.*, 2014 WL 794581, at *6 (C.D. Cal. Feb. 20, 2014) ("This Court sees no principled reason why Title VII retaliation claims are subject to the but-for causation standard while the lesser 'motivating factor' causation would apply to retaliation claims brought under other statutes."); *Doan v. San Ramon Valley Sch. Dist.*, 2014 WL 296861, at *3, n. 4 (N.D. Cal. Jan. 27, 2014) (requiring a but-for causal link between the protected activity and the adverse employment action because "ADA retaliation claims are subject to the same framework of analysis as that of Title VII."); *Equal Emp't Opportunity Comm'n v. Evergreen Alliance Golf Ltd.*, 2013 WL 4478870, at *11 (D. Ariz. Aug. 21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse employment action would not have occurred in the absence of the protected activity.").

This court similarly holds that the Plaintiffs must establish by a preponderance of the evidence that they would not have been terminated but for their engaging in protected activity under the ADA.

### b. Plaintiffs' "cat's paw" theory of causation liability

Plaintiffs advance the "cat's paw" theory of liability in proving that their EEOC and other internal complaints caused their termination. (ECF No. 36 at 5-11). Under this theory, an employer is at fault when one of its agents commits "an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub v. Proctor Hosp.*, 13 S.Ct. 1186, 1193 (2011). Here,

ORDER - 9

Plaintiffs assert that while Powell may not have technically made the official decision, his discriminatory animus towards them arising from the EEOC claims was the actual causal factor in their termination. (ECF No. 36 at 8-9). This argument is supported by evidence that Mr. Powell knew of Plaintiffs' internal and EEOC complaints against him, which allegedly engendered discriminatory animus. (ECF No. 36 at 8). Mr. Powell had the *de facto* authority to act on this bias, according to Plaintiffs, because the American Legion simply allowed him to "run matters," as evidenced by there being no real internal investigation into Plaintiffs' numerous grievances against Mr. Powell nor any investigation by Mr. Powell into their computer policy violations even though he was directed to do so by the VA Information Security Office. (ECF No. 36 at 8-9). While not arguing that Mr. Powell or the American Legion had a legal duty to abide by the employee manual, which provided internal grievance procedures, Plaintiffs assert that the lack of adherence demonstrates that Mr. Powell had the real decision-making authority over the Spokane office. (ECF No. 36 at 9-10). Plaintiffs claim Mr. Powell's bias, along with his *de facto* authority over Plaintiffs, led to their being terminated in retaliation for filing discriminatory complaints against him.

Defendants counter that Plaintiffs have provided no evidence that Mr. Powell exerted any influence over the decision maker regarding their termination. (ECF No. 37 at 2-3). By contrast, Defendants claim Mr. Powell advised his superiors that Plaintiffs should simply be retrained on the VA's computer policies, but was overruled by VA officials who determined that "if the Plaintiffs continued working for the American Legion, the American Legion would lose access to the VA computer system." (ECF No. 37 at 3). However, Defendants have failed to identify who, if not Mr. Powell, made the decision to terminate Plaintiffs or show how the decision was made. Neither party deposed Mr. Powell's superiors. The only evidence to support Defendants' claim that Mr. Powell advocated for the Plaintiffs' continued employment is Mr. Powell's own deposition testimony. But this testimony contradicts Mr. Powell's

ORDER - 10

August 29 letter to Mr. Longacre in which he strongly recommended the Plaintiffs be terminated to "protect the Department and the veterans of the state of Washington." (ECF No. 32-6 at 2). These are disputed material facts.

Additionally, both parties argue that the temporal proximity between Plaintiffs' complaints about Mr. Powell and their termination support their respective positions. Temporal proximity between protected activity and an adverse employment action must be "very close" to suffice as evidence of causation. *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Both parties claim this analysis supports their view because they take different approaches to the timeline. Defendants claim that when looking at when the protected activity began (February 21, 2012) and Plaintiffs' ultimate termination (mid-September, 2012), there is no temporal evidence of retaliation. (ECF No. 23 at 10). Plaintiffs argue that when looking only at August, the temporal proximity between their protected activity and the adverse employment actions against them support a finding of retaliation. (ECF No. 36 at 11-12). Neither argument is dispositive of this issue, nor is either party resting its argument on temporal proximity alone. Therefore, the significance of the timing of events should be left for the finder of fact.

The credibility of Mr. Powell, the degree to which Mr. Powell leveraged his influence over the decision maker, who made the ultimate decision to terminate the Plaintiffs, the degree to which any fact finding investigation was done into the reported computer policy violations, and the temporal proximity impact are material questions in dispute for a jury to hear and decide.

### c. Defendants' legitimate non-retaliatory reason

Defendants contend that even if Plaintiffs can demonstrate a *prima facie* case of ADA retaliation, it has set forth a legitimate, non-discriminary reason for their discharge; namely, "violation of the VA computer-use policy and the VA's ultimatum." (ECF No. 37 at 5). Defendants' claim that "the VA gave Mr. Powell's

ORDER - 11

superiors and American Legion an 'ultimatum' that American Legion would lose access to the VA's computer system if Ms. Williams and Mr. Purcell remained employed. Since access to the VA computer system is a vital part of processing claim[s], this is a legitimate, non-discriminatory basis to terminate Ms. Williams' and Mr. Purcell's employment that has nothing to do with retaliation or discriminatory animus." (ECF No. 23 at 11).

Plaintiffs contend that Defendants' asserted non-discriminatory justification - the computer usage policy - is a pretext and thus does not defeat their retaliation claims. Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1123 (9th Cir. 2000). Evidence of pretext can be direct or circumstantial. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091 (9th Cir. 2008). The Ninth Circuit requires circumstantial evidence of pretext to be "specific" and "substantial." *See e.g., Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

To support their pretext argument, Plaintiffs point to the early August, 2012 fax exchange between Mr. Powell and Ms. Williams in which Mr. Powell wrote Ms. Williams stating "The Spokane office computer access has been revoked for VA computer usage violations and will not granted back until the Spokane Office Staff comply with VA computer usage for workstation." (ECF No. 25-5 at 2). Ms. Williams replied three days later on August 13 asking, "What violations are you talking about Bill? There has not been any violations in the this office since Bob Wallace was our boss and that issue has been taken care of." (ECF No. 25-5 at 2). On August 16, 2012,

the day before Mr. Powell's deadline for Ms. Williams to fix her computer problem, Ms. Williams faxed Commander Sperry a letter saying that "It is absolutely impossible for me to correct any problems with the computer at this time as I have talked to IRM as was told 'Bill Powell had your system shut down and he has to be the one to tell them to turn it back on.'" (ECF No. 32-23 at 2). In other words, Plaintiffs contend that their alleged violation of the VA computer security policy was a pretext for their termination because there was no real investigation and Mr. Powell's revoking their computer access prevented them from actually fixing the problem.

There are material facts in dispute with regard to whether Defendants' stated justification is truly non-discriminatory or merely a pretext; namely, were Plaintiffs in fact violating the computer policy, and if so, what attempts were made by Defendants and Plaintiffs to rectify the problem.

### C. Washington Law Against Discrimination, RCW 49.60

Plaintiffs also claim that Defendants violated the Washington Law Against Discrimination (WLAD), which provides: "It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." RCW 49.60.210(1).

The burden shifting analysis under WLAD is the same as that for the ADA. Accordingly, Plaintiffs must establish that "(1) [they] participated in a statutorily protected activity; (2) an adverse employment action was taken against [them]; and (3) [their activity and the employer's adverse action were causally connected." *Hollenback v. Shriners Hospital for Children*, 206 P.3d 337, 343 (2009). Once an employee has established a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for discharging the

ORDER - 13

employee. *Renz v. Spokane Eye Clinic, P.S.*, 60 P.3d 106, 111 (2002). "Once the presumption is removed, the burden shifts back to the employee. The employee must then create a genuine issue of material fact by showing that the employer's stated reason for the adverse employment action was a pretext for what was a discriminatory or retaliatory purpose. *Id*. at 110. This is met if the Plaintiff establishing that the "reasons given by the employer are not worthy of belief with evidence that: (1) the reasons have no basis in fact, or (2) even if based in fact, the employer was not motivated by these reasons, or (3) the reasons are insufficient to motivate an adverse employment decision." *Id*. "If the employee fails to do this, the employer is entitled to dismissal as a matter of law." *Id.*

As with the ADA claim, the parties dispute only whether Plaintiffs' filing the EEOC and other internal complaints of discrimination caused their termination and if so, whether Defendants had a valid non-discriminatory reason.

**1. Defendant Powell's liability under WLAD**

While the general requirements for proving retaliation are similar to that of the ADA's, one significant distinction is that under the WLAD, "individual supervisors, along with their employers, may be held liable for their discriminatory acts." *Brown v. Scott Paper Worldwide Co.*, 20 P.3d 921, 928 (2001) ("We hold individual supervisors, along with their employers, may be held liable for their discriminatory acts. The plain meaning of RCW 49.60.040(3), by its very terms, encompasses individual supervisors and mangers who discriminate in employment."). In order to be held personally liable under WLAD, a supervisor must have acted "in the interest of [the] employer." *Brown*, 20 P.3d at 926; *see also Jenkins v. Palmer*, 66 P.3d 1119, 1121 (2003) (under *Brown*, "managers and supervisors may be personally liable under WLAD when acting in their employer's interest."). Therefore, unlike Plaintiffs' ADA retaliation claim, Mr. Powell may be held liable along with the American Legion on Plaintiffs' WLAD claims.

## 2. "Substantial factor" standard of proof

Washington courts have not yet decided the impact of *Nassar* on the standard of causation under WLAD. Currently, Washington law provides that the plaintiff must demonstrate that the protected activity was a "substantial factor" in the employer's decision to take the adverse employment action. *Allison v. Hous. Auth. of City of Seattle*, 821 P.2d 34, 42-43 (1991) ("rejecting "but-for" standard of causation in favor of "substantial factor" standard.").

Under the broader reaching and lower burden of the WLAD retaliation claim, both Defendant Powell and the American Legion face potential liability. The same questions of facts which preclude summary judgment on the ADA claim also preclude summary judgement on the WLAD claim.

### D. Privacy Claims

Defendants seek the dismissal of Plaintiffs' state law privacy claims for invasion of privacy by the "unprivileged disclosure of private matters" and "false light." Both claims are based solely upon the disputed allegations that Mr. Powell disclosed Plaintiffs' health issues to two unprivileged employees. These claims both fail as a matter of law because of the absence of any evidence of publication.

An invasion of privacy occurs if one gives publicity to a matter concerning the private life of another and the matter publicized is of a kind that (1) would be highly offensive to a reasonable person and (2) is not of legitimate concern to the public. *Reid v. Pierce County*, 961 P.2d 333, 338 (1998). Publicity for the purposes of invasion of privacy means "communication to the public at large so that the matter is substantially certain to become public knowledge." ... "[C]ommunication to a single person or a small group does not qualify." *Fisher v. State ex rel. Dep't of Health,* 106 P.3d 836, 840 (2005). Accordingly, because the communication was not made to the public at large, and thus there was no publication, Defendants are entitled to judgement as a matter of law on the privacy claims.

ORDER - 15

1    Likewise, a false light claim arises when (1) the defendant publicized a matter,

2    (2) that placed plaintiff in a false light, (3) the false light would be highly offensive to

3    a reasonable person, and (4) the actor knew of or recklessly disregarded the false light

4    in which the other would be placed. *Eastwood v. Cascade Broad. Co.,* 722 P.2d 1295,

5    1297 (1986). Mr. Powell's alleged comments were not publicized and do not reach a

6    level of being highly offensive to support a claim of false light. Rather, a reasonable

7    listener would find the alleged comments to be an opinion which was discourteous

8    and in bad taste. Therefore, Defendants are entitled to judgment as a matter of law on

9    the false light claims.

10    **IT IS HEREBY ORDERED:**

11    1. Defendants' Motion for Summary Judgment on Plaintiffs' ADA and WLAD

12    retaliation claims is **DENIED.**

13    2. Defendants' Motion for Summary Judgment on Plaintiffs' state privacy law

14    claims is **GRANTED.**

15    3.  The court will schedule a further telephone conference to set the final dates

16    to complete pretrial filings and the Pretrial Conference and Jury Trial.

17    **IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and

18    furnish copies to counsel.

19    **DATED** this 25th day of August, 2014.

20                                s/ Justin L. Quackenbush
                                JUSTIN L. QUACKENBUSH
21                        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 16